Citation Nr: 1536759 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 12-14 664 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUES

1. Entitlement to service connection for a pulmonary fibrosis.

2. Entitlement to service connection for a skin disability.


WITNESSES AT HEARING ON APPEAL

The appellant and N. P.


REPRESENTATION

Appellant represented by: Allen Gumpenberger, Agent


ATTORNEY FOR THE BOARD

Joshua Castillo, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1965 to November 1969. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of an October 2011 rating decision of the St. Paul, Minnesota, Regional Office (RO) of the Department of Veterans Affairs (VA). 
 
At the time of his death in December 2011, the Veteran had a pending appeal for the issues set forth on the title page. The Veteran's surviving spouse, who is the appellant, has been substituted as the claimant for the purposes of all claims that were pending at the date of the Veteran's death.

In June 2014, the appellant appeared at a hearing before the undersigned Veterans Law Judge.
 
In October 2014, the Board granted a 60 percent rating for atherosclerotic heart disease and denied a compensable rating for an associated scar. At that time, the Board also remanded the case for further development, which has been completed.

Also, at that time, the appellant was self represented in the case. Since that time, she authorized the agent identified on the title page to represent her.

In April 2015 and May 2015, the appellant's representative raised the issue of total disability based on individual unemployability (TDIU). This issue was already addressed in the Board's October 2014 decision in conjunction with the rating claims. Notably, substitute claimants may not expand or add claims. See 38 C.F.R. § 3.1010(f)(2) (2015).


FINDINGS OF FACT

1. Pulmonary fibrosis was not related to an injury, disease, or event in service.

2. Actinic keratosis of the forearms and hands was not shown to have had onset during service; and actinic keratosis was not related to an injury, disease, or event in service.


CONCLUSIONS OF LAW

1. The criteria for service connection for pulmonary fibrosis are not met. 38 U.S.C.A. §§ 1110, 5107, 5121A (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.1010 (2015).

2. The criteria for service connection for a skin disorder are not met. 38 U.S.C.A. §§ 1110, 1116, 5107, 5121A (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.1010 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015).

A standard September 2011 letter to the Veteran satisfied the duty to notify provisions. The substitution of the appellant as claimant does not trigger any additional notice in this case. See 38 C.F.R. § 3.1010(f)(1).

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c). The Veteran's service treatment records (STRs) and service personnel records have been obtained. Post-service VA and private treatment records have also been obtained. Pursuant to the Board's October 2014 remand, two expert medical opinions by a VA physician were obtained in January 2015, which contain sufficient evidence for deciding the claims. The reports are adequate as they are based upon consideration of the Veteran's prior medical history and examinations, describe the disabilities in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations. 

In April 2015, the appellant's representative presented a new theory of entitlement for the pulmonary fibrosis as possibly secondary to service-connected heart disease. However, other than the bald assertion, there is no indication of such a link such as to trigger another VA opinion for this claim. In May 2015, the representative indicated that an opinion was requested from a doctor, but an opinion has not been submitted. Moreover, in June 2015, the Board provided the representative with an additional 30 days to submit evidence, but none was received. Thus, VA's duty to assist has been met.

Pulmonary Fibrosis

The appellant seeks service connection for pulmonary fibrosis, which she contends was related to an esophageal rupture that the Veteran incurred during combat in Vietnam. See Substantive Appeal (May 2012). In an October 2014 statement, she appears to contend that the in-service esophageal rupture triggered GERD, which led to pulmonary fibrosis. 

STRs, including entrance and separation examinations, are negative for any complaints, diagnoses, or treatment of esophageal rupture. Upon separation from service, the Veteran denied shortness of breath, pain or pressure in chest, chronic cough, frequent indigestion, or stomach/liver/intestinal trouble. Physical examination of the mouth, throat, chest, and lungs was normal.

While the rupture is not shown in service treatment records, the appellant testified that the Veteran sent her a letter about the rupture while he was in service. She also testified that a civilian doctor diagnosed esophageal rupture shortly after separation from service, but that these medical records were destroyed in a fire. See Hearing Transcript (June 2014).
 
Clinical examinations show that the Veteran's lungs were clear from 2004 to 2008. See, e.g., Dr. Rowland records (June 7, 2004 and April 4, 2008). In April 2010, Dr. Hudson diagnosed pulmonary fibrosis and opined that it may, in part, be related to nonservice-connected gastroesophageal reflux disease (GERD) or chronic micro aspiration. In October 2014, the appellant submitted medical literature suggesting that GERD can lead to pulmonary fibrosis. 

In January 2015, a VA physician opined that the Veteran's pulmonary fibrosis was not due to esophageal rupture and that the Veteran did not suffer an esophageal rupture in service. The examiner provided the following rationale:

Pulmonary fibrosis is one form of disease in the interstitial lung disease category. In most cases of pulmonary fibrosis, there is no known cause, the pulmonary fibrosis is idiopathic (IPF). The Veteran was diagnosed by Dr. Hudson with IPF (see progression of Hudson letters over April of 2010, then see letter dated 04/27/2010 and 09/15/2010). If esophageal rupture had caused the IPF, it would have been very apparent and the veteran's pulmonary fibrosis would not have been diagnosed as idiopathic, it would have been diagnosed as secondary to the esophageal rupture. However, there is no medical evidence or knowledge whereby an esophageal rupture has been shown to even be associated with pulmonary fibrosis much less causing or resulting in pulmonary fibrosis.

The record of evidence does not make it clear at all what is meant or intended about an esophageal rupture, or if some error in communication occurred, or some misunderstanding occurred. However, the medical record is clear that Dr. Hudson did not state to the Veteran and his wife that esophageal rupture was associated with, causative of or could result in pulmonary fibrosis. When the Veteran first saw Dr. Hudson on 04/07/2010, the doctor's initial impression of the Veteran's pulmonary condition was IPF, and if not idiopathic, he would be most suspicious of gastric reflux related to the Veteran's hiatal hernia (GERD) or pneumoconiosis related to years of working in the steel industry and likely being exposed to fine metal dust. He notes he had a long discussion with the patient and his wife. The doctor then set about doing tests and evaluating the results. With the test results in hand along with additional history from the patient, the doctor diagnosed IPF, likely genetically pre-disposed given that the patient's brother died from IPF, and coupled with the patient's long history of metal exposure from his work. Dr. Hudson, even then, notes that the GERD aspect is only a possibility...

...Lastly, the whole notion of esophageal rupture occurring in this Veteran in his early 20s while on active duty in Vietnam is implausible, if not outright impossible. For this to have occurred, there would have necessarily been some sort of acute trauma, whether blunt or penetrating. Such an injury, regardless of mechanism, in order to have ruptured or perforated the esophagus, it would have been devastating. Such an injury would have been noticed. Mortality and morbidity are very high with esophageal rupture; and if the Veteran survived, he would have had a profound disability and prolonged convalescence and rehabilitation. Such a recovery would not have gone unnoticed such that there is no record of it in the STRs; especially in light of the fact the Veteran leaves Vietnam, continues in active service for at least another year after leaving Vietnam, and then denies any history of gastrointestinal troubles at separation.

To establish service connection on a direct basis, the evidence must show (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a "nexus" between the claimed in-service disease or injury and the current disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir. 2009). See also 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2015).

The Veteran and the appellant are competent to report a throat injury and throat problems, which are within the realm of their personal experience. 38 C.F.R. § 3.159(a)(2); see Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). However, esophageal rupture and pulmonary fibrosis are not simple medical conditions they are competent to self-diagnose, because such diagnoses fall outside the realm of common knowledge of a lay person, that is, such diagnoses cannot be made based on mere personal observation, which comes through sensory perception. See Jandreau v. Nicholson, 492 F.3d 1372, 1377, n. 4 (Fed. Cir. 2007). An opinion as to the etiology of the Veteran's pulmonary fibrosis is equally complex, especially given that it was not diagnosed until more than 40 years after separation from service. Neither the Veteran nor the appellant has not shown that they are qualified through education, training, or experience to offer medical diagnoses on complex medical conditions. Accordingly, under these unique circumstances, they are not competent to self-diagnose esophageal rupture or pulmonary fibrosis or offer an opinion as to their etiology and their opinion in this regard is of no probative value. Davidson, 581 F.3d at 1316.

Initially, the Board finds that it is not as likely as not that the Veteran sustained an esophageal rupture during service. As the Veteran and the appellant are not competent to self-diagnose esophageal rupture in service, the competent evidence pertaining to the occurrence of an esophageal rupture in service is the January 2015 medical opinion along with the STRs, which appear to be complete. The January 2015 VA examiner opined that the notion that an esophageal rupture occurred in Vietnam is implausible, if not outright impossible, in light of the fact the Veteran continued on active duty for almost one year after returning from Vietnam and STRs, including separation examination, are negative for any complaints, diagnoses, or treatment of esophageal rupture. The examiner explained that mortality and morbidity are very high with esophageal rupture, and if the Veteran survived, he would have had a profound disability and prolonged convalescence and rehabilitation.

The absence of a record of an event that would ordinarily be recorded, such as esophageal rupture, gives rise to a legitimate negative inference that the event did not occur. See AZ v. Shinseki, 731 F.3d 1303, 1315 (Fed. Cir. 2013). See also Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance, J., concurring) (whether something would have been observed and recorded during service may require medical evidence before the absence of recordation may be considered substantive negative evidence). In light of the foregoing, the Board finds the Veteran and the appellant's account of the alleged in-service injury are not competent or credible. Accordingly, there is no competent and credible evidence of an esophageal rupture in service.

The Board finds that the competent evidence pertaining to the etiology of the Veteran's pulmonary fibrosis consists of the Dr. Hudson's April 2010 treatment records and the January 2015 VA opinion. 

Dr. Hudson's opinion that the Veteran's pulmonary fibrosis was possibly related to nonservice-connected GERD or years of post-service work in the steel industry is speculative, as it lacks any degree of medical certainty. The Board finds that this is a speculative medical opinion, which, in this case, provides neither positive nor negative support for the appellant's claim. Fagan v. Shinseki, 573 F.3d 1282, 1289 (Fed. Cir. 2009). Accordingly, Dr. Hudson's opinion is afforded no probative value. In any case, the opinion would not be in favor of the claim because the Veteran was not service connected for GERD and post-service work would be a post-service intercurrent cause.

The VA physician's opinion that the Veteran's pulmonary fibrosis was not related to the claimed in-service esophageal rupture, constitutes competent and persuasive medical evidence with respect to any possible nexus between the Veteran's pulmonary fibrosis and service, which opposes rather than supports the claim. The unfavorable opinion was rendered by a medical expert who reviewed the claims file and supported his conclusion with a reasoned analysis and who is qualified through education, training, or experience to offer a medical diagnosis or medical opinion. The medical opinion is afforded significant weight because it is factually accurate, fully articulated, and based on sound reasoning.

The Board has considered the medical literature submitted by the appellant, but finds that it is of limited probative value. The studies, which address the correlation between GERD and pulmonary fibrosis, are not sufficiently similar the Veteran's case to raise the possibility of a link between service and his pulmonary fibrosis. The Veteran is not service connected for GERD and the record does not indicate a link of his GERD, initially diagnosed after service, to service. Accordingly, the studies are afforded only limited probative value.

In sum, the Board finds that the Veteran's pulmonary fibrosis was not related to an injury, disease, or event in service. As the preponderance of the evidence is against the claim for pulmonary fibrosis, there is no doubt to be resolved, and service connection is not warranted. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015).

A Skin Disability

The appellant seeks service connection for a skin disorder, which she contends had its onset during the Veteran's active duty. At her hearing, the appellant testified that the Veteran's arms were scaly, blotchy, and red and pink, from the elbows to the hands-"the part of him that was exposed to open air." See claim (July 2011). 

The Veteran served on active duty from December 1965 to November 1969, including service in the Republic of Vietnam from October 1967 to October 1968. STRs, including entrance and separation examinations, are negative for any complaints, diagnoses, or treatment of a skin disability. Upon separation from service, the Veteran denied a history of skin disease.

After service, VA and private treatment records are also negative for any complaints, diagnoses, or treatment of a skin disorder. In October 2014, the appellant reported that she and the Veteran brought his skin disorder to the attention of a VA examiner during an unrelated examination. She reported that the examiner acknowledged seeing a similar skin condition on other Vietnam veterans. The September 2011 VA examination reports pertaining to other claims, however, are silent as to a skin disorder.

In January 2015, a VA physician opined that the Veteran's skin disorder was most likely actinic keratosis, not chloracne or a related acneform disease consistent with chloracne, which would be a skin disease associated with presumed exposure to Agent Orange. The rationale was that the Veteran's skin disorder occurred on areas frequently exposed to the sun, but acneform disease consistent with chloracne does not usually occur on areas exposed to open air and sun. The examiner explained that actinic keratosis is caused by sun light exposure over many years. The physician also opined that the Veteran's actinic keratosis was less likely as not caused by or incurred in any in-service injury, event or illness, including Agent Orange exposure. The rationale was that there is no medical evidence of record that the Veteran developed a rash either in-service or within 12 months past his departure from Vietnam.

Initially, the Board notes that the appellant's statements are the only evidence describing the Veteran's skin disorder. The Veteran never described the skin disorder to VA or healthcare providers, at least not evident in the record.

The appellant is competent to report symptoms of a skin disorder since service, which is within the realm of her personal experience in observing the Veteran and as she was married to the Veteran since shortly after his service in January 1970. 38 C.F.R. § 3.159(a)(2); see Layno, 6 Vet. App. at 469-71. However, actinic keratosis and chloracne, or a related acneform disease consistent with chloracne, are not simple medical conditions the appellant is competent to diagnose, because such diagnoses falls outside the realm of common knowledge of a lay person, that is, such diagnoses cannot be made based on mere personal observation, which comes through sensory perception. See Jandreau, 492 F.3d at 1377, n. 4. An opinion as to the etiology of the Veteran's actinic keratosis is equally complex, especially given that it was not diagnosed during his lifetime. The appellant has not shown that she is qualified through education, training, or experience to offer medical diagnoses on complex medical conditions. Accordingly, under these unique circumstances, the appellant is not competent to diagnose the Veteran's skin disorder or offer an opinion as to its etiology and her opinion in this regard is of no probative value. Davidson, 581 F.3d at 1316.

The Board finds that the competent evidence pertaining to the presence of a skin disorder and any nexus to service consists of the January 2015 VA opinion. The physician opined that the Veteran's skin disorder was actinic keratosis of the hands and forearms. Significantly, there is no evidence of chloracne, or other acneform disease consistent with chloracne, during the pendency of the appeal. Accordingly, even when exposure to herbicides is presumed, service connection for a skin disorder is not presumed on the basis of herbicide exposure under 38 C.F.R. § 3.309(e) (2015). See 38 U.S.C.A. § 1116 (West 2014); 38 C.F.R. § 3.307 (2015).

Additionally, the physician opined that the Veteran's actinic keratosis was due to years of sun exposure. The opinion of the VA physician constitutes competent and persuasive medical evidence with respect to a possible nexus between the Veteran's skin disorder and service, which opposes rather than supports the claim. The unfavorable opinion was rendered by a medical professional who reviewed the Veteran's file and supported his conclusion with a reasoned analysis and who is qualified through education, training, or experience to offer a medical diagnosis or medical opinion. The medical opinion is afforded significant weight because it is factually accurate, fully articulated, and based on sound reasoning.

The appellant's report of observable symptoms since service is afforded minimal probative value in light of the fact that the medical examination on separation from service revealed no skin disorders, the Veteran denied a history of skin disease on separation from service, the Veteran never described the skin disorder to VA or private healthcare providers, and the VA physician opined that the Veteran's skin disorder was not related to service. 

In sum, the Board finds that actinic keratosis of the forearms and hands was not shown to have had onset during service; and actinic keratosis was not related to an injury, disease, or event in service. As the preponderance of the evidence is against the claim for a skin disorder, there is no doubt to be resolved, and service connection is not warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.



ORDER

Service connection for pulmonary fibrosis is denied.

Service connection for a skin disorder is denied.




____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs